Yvonne M. WADE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 93–914 (HLS).

United States District Court,
D. New Jersey.

Feb. 15, 1994.

James V. Loewen, Starr, Gern, Davison & Rubin, Roseland, NJ, for plaintiff.

Karl J. Fingerhood, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

SAROKIN, District Judge.

Before the court is plaintiff's motion for attorney's fees under 26 U.S.C. § 7430.

### Introduction

There was a saying years ago (before parking tickets became as expensive as Broadway shows) that recommended: "Pay the two dollars." The philosophy behind that pithy but profound postulate was that the cost and aggravation of fighting the government or one of its agencies usually was not

worth the battle no matter how righteous the cause.

How unfortunate for Ms. Wade that she did not follow this ancient adage—this brief brocard—although in this case it should have been: "Forget the two dollars!" For in her quest to obtain the sum of $343, rightly due her from the Internal Revenue Service, arising from her 1981 tax return, she spent several years and incurred some $10,000 in legal fees. Letters, telephone calls, conferences and pleas of mercy could not persuade the Internal Revenue Service to alter its position.

Finally, plaintiff instituted suit in the United States District Court in Brooklyn, New York. The government responded not by defending the claim, which was indefensible, but rather by seeking its dismissal on the ground that venue properly lay in New Jersey rather than in New York.

As a result, the matter was then transferred to New Jersey, and after having two federal courts review it, on April 21, 1993, judgment was entered *by consent* in favor of Ms. Wade and against the Internal Revenue Service for $343 plus interest. Plaintiff now seeks recompense for her quest and victory.

*Background*

Plaintiff Yvonne Wade and her then-husband George Wade filed a joint income tax return in 1981. Certain audit adjustments made in connection with the 1981 return resulted in a refund due to Yvonne and George Wade of $774.64. Plaintiff and her husband were divorced in 1989. On October 15, 1990, the entire amount of the refund due on the 1981 joint return was applied, pursuant to 26 U.S.C. § 6402(c), to a past due child support obligation of plaintiff's husband.

Plaintiff then filed a claim for "injured spouse" relief using the required Form 8379, requesting her portion of said refund. The Internal Revenue Service (IRS) Center in Holtsville, N.Y. denied plaintiff's request in a letter dated July 17, 1991. Plaintiff tried unsuccessfully through correspondence with and telephone calls to various IRS personnel to have this decision reversed, and eventually filed this suit in the United States District Court for the Eastern District of New York in August, 1992.

The United States moved to have the case dismissed due to improper venue, on the grounds that the plaintiff resides in East Orange, New Jersey. After a hearing, the case was transferred to this district. The government was granted until March 22, 1993 to answer or otherwise respond. On March 19, 1993, the government conceded to plaintiff's position. On or about March 20, the United States filed an Answer and Consent to Judgment. On April 14, the court informed the United States that it requested a form of Judgment as opposed to an Answer and Consent to Judgment. A Judgment was forwarded to the court on April 14, and was entered against the United States on April 21, 1993, in the amount of $343.00 plus statutory interest from October 15, 1990 until paid. The judgment has been paid, and plaintiff now seeks attorney's fees pursuant to 26 U.S.C. § 7430. The government opposes the motion.

*Discussion*

Section 7430 provides that a "prevailing party" may be awarded attorney's fees incurred in administrative proceedings and in litigation. 26 U.S.C. § 7430(a)(1) & (2). A "prevailing party" is defined as one who, *inter alia*, establishes that the "position of the United States" in the administrative proceedings or the litigation was not substantially justified. 26 U.S.C. § 7430(c)(4)(A).[1] The statute provides specific definitions of the "position of the United States" in administrative proceedings and in litigation. The government argues that under these specific definitions, plaintiff does not qualify for attorney's fees under either the administrative costs provisions or the litigation costs provisions. Plaintiff argues that denying her attorney's fees on the basis of these technical definitions would "elevate form over substance and [lead] to an inequitable result." Plf. Reply at 2. She argues that she is entitled to either administrative costs from the date of the July 17, 1991 denial letter, or

---

**1.** The government concedes for purposes of this motion that plaintiff meets the other elements of the definition of a "prevailing party" under § 7430. Gov't.Brf. at 4 n. 3.

to litigation costs from the time she filed suit in the Eastern District of New York on August 26, 1992.

### A. Administrative Proceedings

■ For purposes of awarding fees incurred in administrative proceedings, the "position of the United States" is defined as "the position taken in an administrative proceeding ... as of the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency." 26 U.S.C. § 7430(c)(7).

Plaintiff claims that the processing procedure for Form 8379 excludes the Appeals Office entirely.[2] Since plaintiff's claim involved a refund, there was no call for a notice of deficiency. Plaintiff argues that although neither statutory trigger for administrative costs was possible in her case, she "undertook numerous non-litigation efforts to resolve the misapplied refund, all to no avail," and that she should be compensated for costs she incurred in the endeavor. Plf.Reply at 1. Specifically, plaintiff requests reimbursement for costs incurred after receipt of the July 17 letter, which she argues sets forth "the position of the United States" in "administrative proceedings" for purposes of § 7430(a)(1). Plf.Brf. at 8; Plf.Reply at 2–3.

The government counters that the statute should be construed narrowly, and that Congress intended to foreclose recovery of administrative costs where the taxpayer had received neither document specified in § 7430(c)(7)(B), regardless of the administrative interactions she had with the IRS and the position the government took in those interactions. Gov't.Brf. at 5–6.[3]

In support of this argument the government relies on the legislative history of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub.L. No. 100–647, which amended § 7430 to provide for recovery of attorney's fees incurred in administrative proceedings. Previously the statute had provided generally for fees incurred in "any civil

proceeding." *Huffman v. Commissioner,* 978 F.2d 1139, 1145 (9th Cir.1992). Courts were split as to whether the "position of the United States" in a civil proceeding was to be determined solely from the government's in-court position, or whether its pre-litigation or administrative actions should also be considered. The TAMRA amendment clearly provides for recovery of expenses incurred in administrative disputes, but limits the award to costs incurred after the position of the United States is established in one of two specified ways. The TAMRA Conference Report states:

> the position of the United States is determined as of the earlier of (1) the date of receipt by the taxpayer of the notice of the decision of the IRS Office of Appeals, or (2) the date of the notice of deficiency. **If neither is applicable, the position of the United States is that taken in the litigation.**

House Conf.Rep. No. 1104, 100th Cong., 2d Sess. 226 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515, 5048, 5286 (emphasis added). *See also* Gov't.Brf. at 6 & n. 6.

Although few courts have published opinions interpreting the statute as amended in 1988, several courts have adopted the government's reading of this portion of the statute. In *Donlon I Development Corp. v. United States,* 830 F.Supp. 1315 (C.D.Ca. 1993), 93–1 USTC ¶ 50,339, the United States District Court for the Central District of California denied recovery of administrative costs on the grounds that the case "involved no administrative proceedings that § 7430 recognizes for the purposes of awarding attorney's fees." *Id.* The *Donlon* court denied recovery even though the government itself labelled as "mind-boggling" the actions taken by the IRS agent in the pre-litigation proceedings in question. *Id. See also Nathaniel v. United States,* 92–1 USTC ¶ 50,-023, 1991 WL 323002 (E.D.Cal. Nov. 26, 1991) (denying fees where IRS chose to issue a notice of penalty rather than a notice of

---

**2.** The government does not dispute this claim.

**3.** The government further argues that even if the court were to construe more loosely the statutory provisions defining the administrative position of

the United States, the July 17 letter cannot be considered the equivalent of a decision of the Office of Appeals because it represents merely an initial decision. Gov't.Brf. at 6 n. 5.

deficiency, despite recognition that strict construction of the statute would enable the IRS to avoid fee provision by electing not to send the type of notice specified in § 7430); *Estate of Holmes v. United States*, No. 89–2581, 1990 WL 10062, at *2–3 (E.D.Pa. Feb. 5, 1990) (denying administrative fees because case did not involve Office of Appeals decision and concerned refund, not notice of deficiency); *Nunn v. Commissioner*, 63 T.C.M. (CCH) 3060, 1992 WL 105922 (1992) (denying administrative fees because where neither notice of deficiency nor Appeals Office decision have been issued there have been no administrative costs as defined in § 7430).[4]

In light of the specific wording of the statute as amended, its legislative history, and the weight of the case law strictly construing the requirements for recovery of administrative costs, the court concludes that plaintiff is not entitled to recover her administrative expenses because she received neither a deficiency notice nor a notice of decision from the Office of Appeals. The court recognizes the harshness and unfairness of this result, but must nevertheless apply the law as it now stands.

*B. Litigation Costs*

■ The government's argument for denying plaintiff's request for litigation expenses, however, is not as clearly grounded in the wording and history of the statute. For purposes of recovering attorney's fees incurred in litigation, the "position of the United States" is defined as the position taken "in a judicial proceeding." 26 U.S.C. § 7340(c)(7)(A). The Third Circuit has not rendered a definitive opinion on what actions may be considered in determining "the position taken in a judicial proceeding." The government argues that "the position taken in a judicial proceeding" is that taken in the United States' answer, and that since the United States conceded plaintiff's position in its answer, its conduct is by definition reasonable.[5] Gov't.Brf. at 8.

The government relies on the statement of the United States Court of Appeals for the Ninth Circuit in *Huffman* that "[g]enerally, the position of the United States in the judicial proceeding is established initially by the Government's answer to the petition." *Huffman*, 978 F.2d at 1148. Similarly, the *Donlon* court refused to award litigation fees because the government conceded the petitioner's case in its answer. Even though the government waited 2½ months to concede, the court held that "the position of the United States cannot be measured until it files its answer." *Donlon*, 93–1 USTC ¶ 50,339 at 88,327, 830 F.Supp. at 1318.

As plaintiff points out, however, the *Huffman* court went on to say:

[t]he Congressional intent behind section 7430 is not served by looking only to the answer to determine whether the government's position ... was 'substantially justified.' The better approach is to examine the parties' conduct within each stage of the case.

*Id.*[6] The Fifth Circuit employed the same reasoning in *Hanson v. Commissioner*, 975 F.2d 1150 (5th Cir.1992) to find that the United States could have had an unreasonable position in litigation even if it concedes the plaintiff's case:

Just as the government's concession of a case does not in itself indicate that the government's position was unreasonable, neither does the government's concession in itself indicate that the government's position was reasonable. Rather, the govern-

---

4. The government also cites *Nolfi v. United States*, No. 92–1786 (3d Cir., Apr. 14, 1993), an unpublished decision in which the Third Circuit denied recovery of costs incurred before the taxpayer received a decision from the Office of Appeals. The court notes that this unpublished decision has no precedential effect and therefore does not rely upon it.

5. The position of the United States is "substantially justified" if it is "'justified to a degree that could satisfy a reasonable person.'" *Huffman*, 978 F.2d at 1147 n. 8 (9th Cir.1992) (quoting

*Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)).

6. Although the *Huffman* court was distinguishing between the position the government took in the tax dispute and the one it took in the subsequent dispute over the taxpayer's entitlement to attorney's fees, the logic of the quoted passage also supports looking to actions taken before the filing of the answer to determine the reasonableness of the government's position in the litigation itself.

ment's concession of a case is one factor to be considered when the trial court decides whether the government's overall position was substantially justified. The significance of the government's concession at a given point, in light of all the facts in a given case, will be left in the first instance to the sound discretion of the trial court.

At 1155–56 (citations omitted). Further, the *Hanson* court remarked that the government's proposed reading of the statute would undermine its remedial power:

The government's theory could allow it to pursue a substantively unreasonable theory in litigation, settle the case on the eve of summary judgment, and escape an award of litigation costs to the prevailing tax litigant.... Section 7430, designed to protect taxpayers from overreaching by the IRS, will not abide that result.

*Id.* at 1156.

Although the government's prelitigation position may not be sufficient to trigger liability for expenses under the statute, it is relevant in determining the government's position upon the commencement of the litigation. Until the moment the complaint in the present case was filed, the government was intractable in its denial of plaintiff's claim. When suit was instituted, rather than admit liability, it chose to increase plaintiff's expenses by asserting defenses which were clearly waivable under the circumstances.

If the government had conceded Ms. Wade's case at the beginning of the litigation, its argument that its position was first set forth in its answer and was substantially justified might carry more weight. Here, however, the government declined to examine the merits of plaintiff's substantive position, and instead perpetuated the dispute by focusing on issues of jurisdiction and venue. Plaintiff had already incurred significant expenses defending against the government's position in the litigation by the time her case

was conceded. To allow the government to defeat her claim for reimbursement merely because it belatedly agreed with her position when it finally decided to address the merits of her claim would confound the remedial intent of the statute.

While there can be no "position of the United States" for purposes of recovering litigation expenses prior to the filing of the action, the court considers the government's actions after that date and determines that its litigation position was substantially unjustified.[7] The government does not claim that it acquired any further information between the filing of the suit and its concession of the case that induced it to change its evaluation of plaintiff's substantive claim. Thus, the government's opposition was baseless—and therefore, substantially unjustified under the statute—from the start of the litigation. Plaintiff is entitled to recover her costs incurred after the filing of the court action on August 26, 1992.

## C. Amount of Reimbursement

■ The government argues that if the court awards plaintiff attorney's fees, it should apply cost of living increases to the statutory rate of $75 per hour only from 1986, the effective date of the amendment first providing for hourly fee reimbursement. Gov't.Brf. at 11. Plaintiff argues that the $75 per hour rate should be increased by cost of living adjustments figured from October 1, 1981, the effective date of Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Plaintiff relies on *Tinsley v. Commissioner, supra,* in which the tax court concluded on the basis of legislative history that the § 7430 amendment specifying the $75 hourly fee rate was intended to bring the cost recovery provisions of the tax code in conformity with those of the EAJA, which also provides for fees of $75 per hour.[8] *Id.* at 2636, 1992 WL 63445. The *Tinsley* court reasoned that since EAJA fees are subject to "colas" fig-

---

7. *See Tinsley v. Commissioner,* 63 T.C.M. (CCH) 2629, 1992 WL 63445 (1992) (considering all actions after filing in evaluating the litigation position of the United States). Though the *Tinsley* case was decided under the pre-TAMRA version of § 7430, nothing in the 1988 amendments specifies further the manner in which a court

should determine the litigation position of the United States.

8. Both statutes provide for reimbursement of hourly attorney's fees at $75 per hour. *See* 28 U.S.C. § 2412(d)(2)(A); 26 U.S.C. § 7430(c)(1)(B)(iii).

ured from 1981, it should figure "cola" increases under § 7430 from the same date. *Id.*

Other courts have rejected this reasoning because it involves increasing the $75 per hour figure under § 7430 for cost of living increases accrued several years before the hourly rate even applied under § 7430. If Congress intended this result, it could have written the 1986 amendment to § 7430 so as to incorporate the EAJA figure as adjusted for 1986. Since it elected not to do so, it must have intended that recovery under the tax code would be lower than that available under EAJA. *See, e.g., Bode v. United States,* 919 F.2d 1044, 1053 n. 8 (5th Cir.1990) ("cola" increases to the statutory $75 per hour rate should be figured from January 1, 1986, the effective date of the amendment providing for recovery of hourly fees); *Heasley v. Commissioner,* 967 F.2d 116, 125 (5th Cir.1992); *Cassuto v. Commissioner,* 936 F.2d 736, 742 (2nd Cir.1991).

The Third Circuit has not expressed an opinion on the date from which cost of living adjustments should be calculated in fee awards under § 7430. In jurisdictions where the United States Court of Appeals has not specifically overturned it, the tax court continues to apply its reasoning that adjustments should be figured from 1981 so as to conform monetarily with awards under EAJA. *See, e.g., Bayer v. Commissioner,* 98 T.C. 19, 1992 WL 1954 (1992). In light of the figure specified in the statute, however, this court is persuaded that 1986, the effective date of the § 7430 hourly fee provision, is the correct date for figuring "cola" increases.

■ Finally, the government argues that the court should exclude, as "overhead," expenses such as electronic research fees, postage, telecopies, long distance telephone and transportation costs. Gov't.Brf. at 11. The government relies on *Nolfi v. United States,* 92–2 USTC ¶ 50,511, 85780–81, 1992 WL 186982 (E.D.Pa.1992), *rev'd in part on other grounds,* Case No. 92–1786 (3d Cir., Apr. 14, 1993), in which the United States District Court for the Eastern District of Pennsylvania denied recovery of such costs on the grounds that they were already included as part of the hourly fee. Plaintiff disagrees,

again relying on *Tinsley,* in which the court awarded such expenses as part of the recovery of costs. *See Tinsley,* 63 T.C.M. (CCH) 2629, 2637, 1992 WL 63445 (1992).

The Third Circuit has not spoken on the issue of whether such expenses are reimbursable as litigation costs under § 7430. The court finds persuasive the reasoning of the United States Court of Appeals for the Eighth Circuit in *Miller v. Alamo,* 983 F.2d 856 (8th Cir.1993), that costs such as traveling, mailing, and photocopying "are inevitable in any litigation, and are reasonably considered 'reasonable litigation costs' which may be recovered pursuant to 26 U.S.C. § 7430(c)(1)." *Id.* at 862 (citations omitted). Plaintiff, then, is entitled to recover incidental costs of litigation in addition to hourly attorney's fees under § 7430.

*Conclusion*

For the foregoing reasons, plaintiff's motion for attorney's fees under 26 U.S.C. § 7430 is hereby granted to the extent of costs and hourly attorney's fees incurred after the filing of plaintiff's district court suit on August 26, 1992, adjusted for cost of living increases calculated from January 1, 1986. The parties are directed to submit an order consistent with the foregoing opinion and calculating the amount due.